1
2
3                       **UNITED STATES DISTRICT COURT**
4                     **NORTHERN DISTRICT OF CALIFORNIA**
5                            **SAN JOSE DIVISION**
6

7    MAHA ASKAR,                              Case No.  19-cv-06125-BLF
8                    Plaintiff,
                                              **ORDER GRANTING MOTION FOR**
9         v.                                  **FINAL APPROVAL OF CLASS**
                                              **ACTION SETTLEMENT AND**
10   HEALTH PROVIDERS CHOICE, INC.,           **MOTION FOR ATTORNEY'S FEES**
11                   Defendant.               [Re:  ECF Nos. 41, 42]
12

13        Before the Court are (1) Plaintiff's Motion for Final Approval of Class Action Settlement;

14   and a Motion for Attorney's Fees, Costs, Service Award, and Settlement Administration

15   Expenses.  *See* ECF Nos. 41 ("Fees Mot."), 42 ("Final App. Mot.").  No oppositions have been

16   filed and there are no objectors.  The Court held a hearing on the motions on October 7, 2021.  For

17   the reasons stated on the record and explained below, the Court GRANTS both motions.

18   **I.    BACKGROUND**

19        Plaintiff Maha Askar filed this action on September 26, 2019, asserting violations of the

20   California Labor Code, California Business & Professions Code, and the federal Fair Labor

21   Standards Act ("FLSA"), on behalf of herself and others similarly situated.  *See* ECF No. 1

22   ("Compl.").  Plaintiff alleged that Defendant Health Providers Choice, Inc., employed numerous

23   non-exempt hourly health care professionals for travel assignments at health care providers across

24   the country.  *Id.* ¶ 11.  HPC allegedly paid those traveling health care professionals a weekly per

25   diem in addition to their hourly pay, but failed to include that per diem in the regular rates of pay

26   when calculating overtime and double time.  *Id.* ¶¶ 13-17.  Plaintiff sought to certify a class of all

27   non-exempt hourly employees employed by HPC in California who worked one or more

28   workweeks in which they were paid overtime and received per diem pay.  *Id.* ¶ 24.  Defendant

answered the complaint on November 11, 2019.  *See* ECF No. 15.  Plaintiff then filed an amended complaint, *see* ECF No. 26, which Defendant also answered, *see* ECF No. 28.  The Parties notified the Court of a settlement on September 23, 2020.  *See* ECF No. 34.

On March 4, 2021, the Court granted preliminary approval to the Parties' settlement ("Settlement Agreement").  *See* ECF No. 39.  The Settlement Agreement defines the Settlement Class as follows:

> All non-exempt hourly employees employed by Defendant in California at any time from September 26, 2015 through the date the Court enters an order granting preliminary approval of the Settlement who worked one or more workweeks in which they were paid overtime and received per diem pay and/or a monetary bonus.

ECF No. 36-5 ¶ 2.  Defendant has agreed to provide a non-reversionary Settlement Fund of $90,000.  Settlement Agreement ¶ 5.  The Settlement Fund is inclusive of attorneys' fees and costs to Plaintiff's counsel, individual settlement payments to the Settlement Class, a service award to Plaintiff, and the Settlement Administrator's fees and costs.  *Id.*  Employer-side payroll taxes, if any, are not to be paid from the Settlement Fund.  *Id.*

Under the Settlement Agreement, each member of the Settlement Class will receive two checks.  One check with 95% of his or her settlement payment will be consideration for release of the Class Claims.  Settlement Agreement ¶ 12.  A second check with 5% of his or her settlement payment will be labeled "FLSA Settlement Payment."  *Id.*  Cashing the second check will represent the Class Member's opt-in to the FLSA class and result in a release of that member's FLSA claims.  *Id.*  Members of the Settlement Class who do not cash the FLSA check will not opt-in to the FLSA collective.  *Id.*  A supplemental FLSA notice explaining the effect of cashing the FLSA check will be sent to the same 28 individuals who are in the Settlement Class.  *See* ECF No. 45.

Following preliminary approval, the Settlement Administrator provided notice by mail to each of the 28 class members.  Final. App. Mot. at 7.  When two notices were returned without a forwarding address, the Settlement Administrator successfully obtained updated addresses and remailed the notices.  *Id.*  The Settlement Administrator did not receive any objections, and no class member filed a dispute regarding the number of overtime hours worked.  *Id.*

On October 7, 2021, the Court heard both motions and indicated that it would grant final approval and the request for attorney's fees and related expenses, pending submission of a supplemental FLSA notice.

## II.   MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.   Rule 23 Certification Requirements

In order to grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

### i.   The Class Meets the Requirements for Certification Under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Askar seeks certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently

1    adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

2           When it granted preliminary approval of this class action settlement, this Court concluded

3    that these requirements were satisfied.  *See* ECF No. 39.  The Court is not aware of any facts that

4    undermine that conclusion, but reviews briefly each of the Rule 23 requirements again.

5           Under Rule 23(a), the Court concludes that joinder of all 28 class members would be

6    impracticable under the circumstances of this case.  *Floyd v. Saratoga Diagnostics, Inc.*, 2021 WL

7    2139343, at *3 (N.D. Cal. May 26, 2021) ("[C]lasses of 20-40 may or may not be big enough

8    depending on the circumstances of each case.").  The commonality requirement is met because the

9    key issue in the case is the same for all class members—whether Defendant improperly excluded

10   from overtime calculations per diem and bonus payments.  Askar's claims are typical of those of

11   the Settlement Class, as her overtime calculations did not include per diem or bonus payments.

12   *See Hanlon*, 150 F.3d at 1020 (typicality requires that the claims of the class representative are

13   "reasonably co-extensive with those of absent class members").  Finally, to determine Plaintiff's

14   adequacy, the Court "must resolve two questions:  (1) do the named plaintiff[] and [her] counsel

15   have any conflicts of interest with other class members and (2) will the named plaintiff[] and [her]

16   counsel prosecute the action vigorously on behalf of the class?"  *Ellis v. Costco Wholesale Corp.*,

17   657 F.3d 970, 975 (9th Cir. 2011).  There is no evidence of any conflict of interest that would

18   preclude Askar from acting as class representative or her counsel from acting as Class Counsel,

19   and the Court is not concerned that Class Counsel has not vigorously litigated this action on behalf

20   of the class.

21          Now turning to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes

22   are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.

23   The common question in this case—whether Defendant improperly excluded from overtime

24   calculations per diem and bonus payments—predominates over individual questions among the

25   class members.  That individual calculations of damages are required does not preclude

26   certification.  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013).  Given that

27   commonality and the number of class members, the Court concludes that the requirements of Rule

28   23 are met and thus that certification of the class for settlement purposes is appropriate.

United States District Court
Northern District of California

**ii.    The Settlement is Fundamentally Fair, Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)).  "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion."  *Id.* (internal quotation marks and citation omitted).  In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon*.  Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026-27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).  "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'"  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting *Manuel for Complex Litigation* (Third) § 30.42 (1995)).

a.    Notice Was Adequate

The Court previously approved Askar's plan for providing notice to the class when it granted preliminary approval of the class action settlement.  *See* ECF No. 39.  Prior to granting preliminary approval, the Court carefully examined the proposed class notice and notice plan, and determined that they complied with Federal Rule of Civil Procedure 23 and the constitutional

5

United States District Court
Northern District of California

1   requirements of Due Process.  *Id.* ¶ 5.  Plaintiff now provides a declaration from the case manager

2   at the Settlement Administrator explaining the implementation of the plan.  *See* ECF No. 42-5.

3   Based on that declaration, notice was provided to all 28 class members, including two members

4   whose notice had to be remailed to a different address after the initial notice was returned as

5   undeliverable.  *Id.* ¶¶ 5-6.  "[N]otice plans estimated to reach a minimum of 70 percent are

6   constitutional and comply with Rule 23."  *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-

7   04766-JSW, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017).  Because notice here reached

8   every class member, the Court is satisfied that the class members were provided with the best

9   notice practicable under the circumstances and that that notice was adequate.

10                      b.   *Hanlon* Factors

11          The Court now turns to the *Hanlon* factors.  First, the Court must consider the strength of

12   Plaintiff's case, weighing the likelihood of success on the merits and the range of possible

13   recovery.  Plaintiff's California state law claims appear viable on their face, and Defendant raised

14   a number of defenses in its answer.  Plaintiff faced risks in prosecuting its California state law

15   claims, independent of the legal uncertainty regarding the separate FLSA claim that was resolved

16   by the Ninth Circuit in *Clarke v. AMN Servs., LLC*, 987 F.3d 848 (9th Cir. 2021).  Second,

17   considering the risk, expense, complexity, and duration of litigation, Plaintiff would have likely

18   faced significant hurdles in litigating this case, especially given the uncertain legal landscape at

19   the time the settlement was reached.

20          Third, given the common questions of law and fact in this case, it is likely that the class

21   would have been certified had the case progressed, but Plaintiff would have likely faced

22   opposition from Defendants, again because of the legal uncertainty regarding Plaintiff's theory at

23   the time of settlement.

24          Fourth, the settlement recovery for the class members is substantial.  The average

25   individual payout is $2,000, and the highest individual payout is more than $10,000.  Final App.

26   Mot. at 11.  The $90,000 fund is more than 50% of the projected maximum potential recovery of

27   $171,014.06 when all claims are included.  *See id.*  This is well over the range of percentage-based

28   recoveries other courts have found acceptable.  *See, e.g.*, *Greko v. Diesel U.S.A., Inc.*, 2013 WL

                                                          6

1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24 percent recovery).

Considering the fifth and sixth factors, although there had been little formal discovery prior to settlement, Plaintiff did obtain several internal documents and payroll data from Defendant through informal discovery that informed the settlement negotiations.  The Court is satisfied that this informal discovery made the Parties sufficiently familiar with the issues in this case to have informed opinions regarding its strengths and weaknesses under factor six.

Under factors seven and eight, there was no government participant, but the class reaction to the settlement has been favorable.  The notice reached all 28 members of the class, and there was not a single objection to the settlement.  "A court may properly infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."  *Knapp v. Art*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017).

Based on those factors, and after considering the record as a whole guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement is not the result of collusion, and that the settlement is fair, adequate, and reasonable.

### B.    FLSA Collective and Supplemental FLSA Notice

As discussed at the hearing, how the settlement handles the FLSA claims of the Settlement Class is unique.  Typically, the Court conditionally certifies an FLSA class or subclass, Plaintiff obtains opt-ins from members of that class or subclass, and then the Defendant has an opportunity to move for decertification once the opt-in period has ended.  *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108-1110 (9th Cir. 2018) (adopting this "two-step approach [that] has been endorsed by every circuit that has considered it").  Assuming the collective is not decertified, individuals who opted in receive consideration for their release of their FLSA claims.  Here, however, Plaintiff has not previously sought conditional certification and opt-ins from the FLSA collective.  Instead, Plaintiffs seek such certification and opt-in status by way of notice and check cashing by the collective members.

At the final approval hearing, the Court raised concerns about this procedure and instructed Plaintiff and Defendant to provide a supplemental notice to FLSA class members identifying their rights under the FLSA and clarifying that cashing the FLSA check will constitute their "opt-in"

United States District Court
Northern District of California

and release of FLSA claims.  The Court also held a further case management conference to discuss the limited scope of the FLSA collective that is contemplated in the settlement agreement. Plaintiff confirmed that the FLSA collective contains the same 28 members as does the Rule 23 class, who are residents of California.

Because the Ninth Circuit has recognized that "the proper means of managing a collective action . . . is largely a question of 'case management,'" and because Defendant will not seek decertification given the settlement of this action, the Court conducts the analysis of whether the 28 potential members of the collective meet the requirements of the FLSA, construing this motion for final approval as a motion to conditionally certify a collective action.  *Campbell*, 903 F.3d at 1110 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)).

Plaintiffs define the collective as:

> All non-exempt hourly employees employed by Defendant in California at any time from September 26, 2015 through the date the Court enters an order granting preliminary approval of the Settlement who worked one or more workweeks in which they were paid overtime and received per diem pay and/or a monetary bonus.

ECF No. 36-5 ¶ 2.  An FLSA collective may be certified if the potential opt-ins are "similarly situated" to each other.  29 U.S.C. § 216(b).  Under the FLSA, workers are similarly situated "to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."  *Campbell*, 903 F.3d at 1117.  This standard is "not particularly stringent."  *Magana-Muñoz v. West Coast Berry Farms, LLC*, 2020 WL 3869188, at *6 (N.D. Cal. July 9, 2020).  The FLSA "not only imposes a lower bar than Rule 23; it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial."  *Campbell*, 903 F.3d at 1112.  Having already found that the Settlement Class meets the requirements of Rule 23, the Court has no difficulty concluding that the 28 potential opt-ins to the collective are "similarly situated" for the purposes of the FLSA.  The 28 potential opt-ins all share a "similar issue of law or fact."  *Id.* at 1117.  Each of the 28 potential opt-ins had per diem or bonus payments that Defendant improperly excluded from his or her overtime calculations.  As with the Rule 23 class, individual calculations of damages do not make the members of the collective sufficiently dissimilar to preclude collective action certification.

1    Accordingly, the Court finds that the requirements are met for FLSA certification and

2    CONDITIONALLY CERTIFIES the collective.  The Parties stipulated to a supplemental FLSA

3    notice, which the Court hereby APPROVES.  *See* ECF No. 46.  As stated in that stipulation,

4    Plaintiff SHALL file with the Court a list of the members of the Settlement Class who have cashed

5    their FLSA checks and "opted-in" within 30 days of the expiration date of the FLSA checks.

6                                        *        *        *

7    Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED.

8    **III.    MOTION FOR ATTORNEY'S FEES, COSTS, SERVICE AWARD, AND**
         **SETTLEMENT ADMINISTRATION EXPENSES**
9

10   Plaintiff seeks an award of $22,500 in attorneys' fees, $2,754.56 in costs, a $1,000 service

11   award, and $3,500 in settlement administration expenses.  *See* Fees Mot.

12       **A.    Attorney's Fees and Expenses**

13            **i.    Legal Standard**

14   "While attorneys' fees and costs may be awarded in a certified class action where so

15   authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent

16   obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

17   already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th

18   Cir. 2011).  "Where a settlement produces a common fund for the benefit of the entire class," as

19   here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery

20   method" to determine the reasonableness of attorneys' fees.  *Id.* at 942.

21   Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of

22   a percentage of the common fund recovered for the class.  *Bluetooth*, 654 F.3d at 942.  Courts

23   applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee

24   award, providing adequate explanation in the record of any special circumstances justifying a

25   departure."  *Id.* (internal quotation marks omitted).  However, "[t]he benchmark percentage should

26   be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the

27   percentage recovery would be either too small or too large in light of the hours devoted to the case

28   or other relevant factors."  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301,

United States District Court
Northern District of California

9

1311 (9th Cir. 2011).  Relevant factors to a determination of the percentage ultimately awarded

include:  "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of

work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5)

awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL

3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of

hours the prevailing party reasonably expended on the litigation (as supported by adequate

documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."

*Bluetooth*, 654 F.3d at 941.  This amount may be increased or decreased by a multiplier that

reflects factors such as "the quality of representation, the benefit obtained for the class, the

complexity and novelty of the issues presented, and the risk of nonpayment."  *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the

reasonableness of a percentage award.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir.

2002).  Where the attorneys' investment in the case "is minimal, as in the case of an early

settlement, the lodestar calculation may convince a court that a lower percentage is reasonable."

*Id.*  "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when

litigation has been protracted."  *Id.*  Thus even when the primary basis of the fee award is the

percentage method, "the lodestar may provide a useful perspective on the reasonableness of a

given percentage award."  *Id.*  "The lodestar cross-check calculation need entail neither

mathematical precision nor bean counting. . . .  [courts] may rely on summaries submitted by the

attorneys and need not review actual billing records."  *Covillo v. Specialtys Cafe*, No. C-11-

00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and

citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-

pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24

F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### ii.   Discussion

Plaintiff seeks an award of attorney's fees totaling $22,500, which is 25% of the $90,000

1    gross Settlement Fund, in addition to $2,754.56 in costs.

2          The Court first approves the $2,754.56 in costs.  The Court has reviewed Plaintiff's

3    itemized lists of costs and finds that all of the expenses were necessary to the prosecution of this

4    litigation.  *See* ECF No. 41-5.

5          The Court also finds the amount of attorney's fees to be reasonable.  Plaintiff's request is

6    reasonable under the percentage-of-recovery method.  The 25% request here is the "benchmark" in

7    this circuit.  *Bluetooth*, 654 F.3d at 942.  The Court sees no reason that the attorney's fees here

8    should be reduced below the benchmark percentage.  A lodestar cross-check confirms this

9    reasonableness.  Class Counsel states that the total lodestar from inception of this case through

10   settlement is $61,710.  The hourly rates charged by the two attorneys for Plaintiff have been

11   approved by multiple courts across California, and the Court finds the number of hours expended

12   to be reasonable.  *See* ECF No. 41-4 ¶ 3 (listing cases).  Using $61,710 as the lodestar results in a

13   negative multiplier of 0.37.  "A negative multiple 'strongly suggests the reasonableness of [a]

14   negotiated fee.'"  *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, 2021 WL 4133860, at *6

15   (N.D. Cal. Sep. 10, 2021) (quoting *Rosado v. Ebay Inc.*, 2016 WL 3401987, at *8 (N.D. Cal. June

16   21, 2016)).  Accordingly, the requested fee amount is reasonable.

17        **B.    Service Award**

18        Plaintiff seeks an incentive award of $1,000.  Incentive awards "are discretionary . . . and

19   are intended to compensate class representatives for work done on behalf of the class, to make up

20   for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize

21   their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d

22   948, 958-59 (9th Cir. 2009) (internal citation omitted).

23        "Incentive awards typically range from $2,000 to $10,000."  *Bellinghausen v. Tractor

24   Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015).  Askar's declaration explains how she agreed

25   to serve as a class representative, despite the risk that she would not be able to find further work as

26   a travel nurse as a result of taking on the case.  ECF No. 41-6 ¶ 5.  She estimates that she spent

27   about 25 hours on this matter.  *Id.* ¶ 6.  An incentive award in the amount of $1,000 (in addition to

28   the amount owed her as a class member) is proportional to the class members' recoveries, which

United States District Court
Northern District of California

11

average $2,000. *See Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (district court must "consider the proportionality between the incentive payment and the range of class members' settlement awards."). The Court concludes that the requested $1,000 incentive award is appropriate in this case.

**C.    Settlement Administrator Fee**

Finally, the Court finds that the $3,500 settlement administrator fee is reasonable in this case, as it does not exceed the cap that the Court imposed at the preliminary approval stage.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1)    Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED;

(2)    Plaintiff's Motion for Attorney's Fees, Costs, Service Award, and Settlement Administrator Expenses is GRANTED; and

(3)    Plaintiff SHALL file with the Court a list of the members of the Settlement Class who have cashed their FLSA checks and "opted-in" to the FLSA collective within 30 days of the expiration date of the FLSA checks.

Dated:  October 18, 2021

_____
BETH LABSON FREEMAN
United States District Judge